UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| T. D. C. a minor by his mother,<br>COMALIANA V. ANDERSON,<br><br>                Plaintiff,<br><br>   vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the<br>Social Security Administration,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:12-cv-00605-SEB-DML<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

T.D.C., a minor ("Claimant"), by his mother Comaliana V. Anderson, seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act.

## Introduction

The Claimant had received SSI benefits from infancy beginning in 2000 because of complications from his premature birth, but those benefits were later terminated after a medical review in 2005 found that he no longer was disabled. The termination of benefits was appealed through the administrative process and to this court, which affirmed the Commissioner's 2008 decision on July 28, 2009. *See* Case No. 1:08-cv-1544-DML-LJM. The Claimant applied again for SSI in 2008 and alleged that his disability began on April 1, 2008. (R. 111). Acting for the Commissioner of the Social Security Administration following a hearing on

December 28, 2010, an administrative law judge ("ALJ") found that the Claimant was not disabled at any time through the date of his decision of April 22, 2011. The national Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. The Claimant timely brought this civil action for review of the Commissioner's decision under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) (which makes section 405(g) applicable to judicial review of denials of SSI benefits).

The Claimant contends that the ALJ's 2010 ecision is erroneous because (a) the Claimant's impairments met, or medically or functionally equaled, the criteria under Child Listing 112.08 (personality disorders), or that the ALJ was required to hear testimony from a medical expert before reaching a contrary conclusion and (b) the ALJ did not make an express determination of the credibility of the Claimant's mother.

For the reasons detailed herein, the Commissioner's decision is AFFIRMED.

## Standard for Proving Disability

A person who is younger than 18 is eligible for disability benefits under the SSI program if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The SSA has implemented this statutory standard by, in part, prescribing a three-step sequential evaluation process. 20 C.F.R. § 416.924. Step one asks if the child is

engaged in substantial gainful activity (*i.e.,* is earning money at a certain level); if he is, then he is not disabled. § 416.924(b).  Step two asks whether the child's impairments, singly or in combination, are severe; if they are not, then he is not disabled.  § 416.924(c).  The third step is an analysis of whether the child's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B.  If they do and the duration requirement is satisfied, then the child is deemed to be disabled.  §416.924(d).

      The Part B Listing of Impairments is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has adjudged are disabling in children.  20 C.F.R. § 416.925.  In general, each listed condition is defined by two sets of criteria:  (1) diagnostic findings that substantiate the existence of a listed condition and (2) sets of related functional limitations that substantiate the condition's disabling severity.  *Id.*  A child's impairment or group of impairments can satisfy a listed condition in one of three ways:  by meeting all the listed criteria, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, § 416.926 (*i.e.,* the impairments do not match the listed criteria for a listed condition but they are of "equal medical significance" to those criteria or condition), or by functionally equaling the criteria, § 416.926a(a).

      Functional equivalence involves an analysis of six "domains" of functioning and determination of whether and the extent to which a child's impairments limit his functioning in those domains.  The domains are:

- (1) acquiring and using information,
- (2) attending to and completing tasks,
- (3) interacting and relating with others,
- (4) moving about and manipulating objects,
- (5) caring for self, and
- (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If the child's impairments cause "marked" limitations in at least two domains, or cause "extreme" limitations in at least one domain, then his medical condition is functionally equivalent to a listing and he is disabled. 20 C.F.R. § 416.926a(d). In general, a "marked" limitation exists when a child's impairment(s) "interfere[] seriously with [his] ability to independently initiate, sustain, or complete activities" within a particular domain. It is a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one that "very seriously" interferes with a child's ability to initiate, sustain, or complete activities within a domain. 20 C.F.R. § 416.926a(e)(3).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a

scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

The Claimant is an elementary school student.  He contends that the record evidence of his disruptive behavior, particularly at school, compelled a finding by the ALJ that the Claimant met, medically equaled, or functionally equaled listing 112.08, which describes a severity of personality disorders that is presumptively disabling in children.  We find, however, insufficient basis for reversing or remanding the Commissioner's decision that the Claimant was not disabled.

Listing 112.08 covers personality disorders that are "[m]anifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness."  To fall under the listing, the disorder must either satisfy both A criteria and B criteria, or must manifest itself through functional deficits.  The ALJ found that the B criteria were not met.  The B criteria require marked impairment in at least two of the

following four areas:  (a) age-appropriate cognitive/communicative function; (b) age-appropriate social functioning; (c) age-appropriate personal functioning; and (d) maintaining concentration, persistence, or pace.  The ALJ determined that the Claimant had less than marked impairment in all four areas.  As to the six functional domains, the ALJ determined that the Claimant was not markedly limited in any of them.

### 1. The ALJ's evaluation of the evidence is reasoned.

The overall thrust of the ALJ's evaluation of the Claimant's functioning, both in relation to the B factors under listing 112.08 and with respect to the six domains of functioning, is that the Claimant's impulsivity, aggressiveness, lack of concentration, and otherwise poor control of his behavior are significantly improved and well controlled by medication, when he takes it.  He does well while on medication and is hyperactive and does poorly to control his behavior without it.  The evidence adequately supports that conclusion.

Although the Claimant assails the determination that he is not disabled, he cannot point to any particular line of evidence that the ALJ failed to consider when making that determination.  Contrary to the Claimant's contentions, the ALJ addressed (a) the Claimant's treatment records from Gallahue Mental Health Center, which was precipitated by behavioral problems at school in the Spring of 2008, and which led to a prescription (Concerta) for the treatment of Attention Deficit Hyperactivity Disorder and Disruptive Behavior Disorder NOS, (b) various school records documenting incidents of disruptive and aggressive behavior in the

Spring of 2008 and in 2010, (c) one-page reports by two school teachers in June 2010 describing the Claimant as "marked" or "extreme" in various of the six domains of functioning, and (d) school records in March 2011 (following the hearing but before the ALJ's decision) documenting two instances of inappropriate behavior over a week's time in that month.  The ALJ addressed these records—and many others—as part of a longitudinal evaluation of the Claimant's medical and mental health treatment and his functioning at school.  Among other things, the ALJ described and evaluated the following evidence.

### *Treatment at Gallahue*

In April 2008—while in the second grade—the Claimant was first seen at Gallahue Mental Health Center and was reported to be hyperactive and with poor impulse control, and to have received frequent detentions at school.  He was initially diagnosed with a disruptive disorder NOS and "rule out ADHD."  The Claimant received mental health services at Gallahue periodically from April 21, 2008, through October 23, 2008, and was placed on medication (Concerta) to address his behavioral and concentration issues.  An October 2008 Report of Psychiatric Status described significant progress and improvement, and it discharged the Claimant from counseling treatment at Gallahue and noted his need for continued medication.  The report recounted that the Claimant had not received any school detentions since beginning his medication regimen and that he had had no issues with easy distraction, excessive talking, hyperactivity, worry, and poor

7

concentration since starting medication.  The Claimant's mother also reported that things were going well and the Claimant was no longer in trouble at school.

In November 2008, the Claimant underwent a mental status examination by an agency psychologist, Dr. Robert R. Blake.  His mother reported to Dr. Blake that the Concerta had helped a lot and that the Claimant's behavior was so improved, she believed he probably did not need continued counseling.  The Claimant's academic performance in the second grade was also good, and his mother stated that he was earning mostly As and Bs.  Overall, Dr. Blake indicated that the Claimant had good functioning in the classroom and socially and that his ability to continue to function well would be primarily affected by whether the Claimant took his medication.  Dr. Blake diagnosed the Claimant with ADHD but controlled with medication.  (*See* R. 22).  The Claimant also had a consultative physical evaluation by an agency physician in November 2008.  His asthma was found to be appropriately controlled by medication and no problems with his physical health were noted.  (*Id.*).

### *School Case Conference Reports*

The Claimant was periodically evaluated by a school case conference committee that tracked a language impairment for which the Claimant received special school services in the form of speech therapy.  The ALJ discussed that the case conference committee report dated March 2009 noted that the Claimant had made steady progress in speech therapy, had been moved to an advanced reading

group, and had average math and writing skills.  The report noted he had good social skills and got along fine with the other children.  (R. 23, R. 189).

The ALJ also discussed the school case conference committee report dated April 2010, which was prepared during the Claimant's third grade year. ( R. 210). That evaluation did not indicate any problems with the Claimant's cognitive functioning, did not document any problems with the Claimant's social functioning, and noted that the Claimant's teacher described him as a student who completes his homework and who can be a leader at times.

### *Martindale Brightwood Health Center*

The Claimant received regular healthcare at Martindale Brightwood Health Center, which managed his asthma and ADHD care and treatment.  The ALJ noted that those records, dated in August 2009, March 2010, June 2010, and November 2010, tracked the Claimant's ADHD symptoms (noting how the Claimant was doing in the areas of hyperactivity, inattentiveness, impulsivity, and learning and socializing problems) and judged whether the Claimant's mood and behavior were within normal limits.  They characterized the Claimant's mood and behavior as within normal limits, his ADHD symptoms as improved, and correlated the medication with his controlled behavior.  The November 2010 record also stated that the claimant almost made the honor roll.  This view of the medical professionals at Martindale Brightwood—that the Claimant's behavioral issues are controlled when he attends properly to his medication—is consistent with the

medical opinion that Dr. Blake, the agency examiner, had reached in November 2008.

### Evidence of Poor Behavior, Concentration, and Social Functioning

The ALJ did not ignore that the Claimant exhibited some instances of very poor behavior at school and that two teachers reported in June 2010 that he had marked or extreme deficits in functioning. Instead, the ALJ acknowledged and evaluated the teachers' reports, noted that school records documented three separate instances of bad behavior in January 2010, February 2010, and November 2010, and two instances of unacceptable behavior in March 2011. The March 2011 behavior—defiant behavior while the Claimant was serving in-school detention—was discussed in a 2011 school case conference report that was also supplied after the hearing.

The ALJ determined that the teachers' statements—noting "marked" and "extreme" problems in many functional areas—were not supported by the overall longitudinal record, including detailed school case conference reports and the Martindale Brightwood Health Center records.[1] His contrast of the teachers' opinions with the medical records and the longitudinal history of case conference

---

[1] Two teachers filled out one-page evaluation forms supplied by the Claimant's counsel that asked them to place a checkmark to denote the Claimant's "ability level" as "no limitation," "less than marked," "marked," or 'extreme" in each of the six functional domains. The forms do not define these terms. One teacher checked that the Claimant was "marked" in his ability level for "Attending and Completing Tasks" and "extreme" in his ability level for "Interacting and Relating to Others." In explaining her views, the teacher said that the Claimant "has the ability to interact appropriately, however he chooses to be argumentative and talk back to adults"; his "peer relations are poor"; but he "can be attentive when he is interested in the subject taught." (R. 208). The second teacher checked that the claimant was "marked" in his ability level for "Acquiring and Using Information," "Attending and Completing Tasks," "Moving About and Manipulating Objects," and "Caring for Self." She checked that the Claimant was "Extreme" in his ability level for "Interacting and Relating to Others" and "Health and Well-Being." She supported her views with the explanation that the Claimant "is very disruptive" and "has a very difficult time staying on task." (R. 209).

10

reports provided a sufficient and reasoned basis on which to discount those opinions.

With regard to the three documented instances of poor behavior at school in 2010 and those in March 2011, the ALJ analyzed them as bearing on the Claimant's social functioning, but also viewed them as reflective of behavioral problems tied to failures in the Claimant's medicine regimen. The ALJ stated: "As pointed out in the record, when off medication, the claimant gets very hyperactive." (R. 19). Again, that analysis is strongly supported by the record, including the school's case conference evaluation of the Claimant's March 2011 behavior (in which he was disruptive, then disrespectful and physically aggressive toward a teacher, and then obstinate and defiant). The report notes that the Claimant had not taken his medication and that his doctor recently had changed his medication. (R. 533).

On the whole, the ALJ addressed the pertinent evidence and evaluated it against the requirements of the relevant listings. We find that the decision is adequately supported.

We now turn to the Claimant's arguments that the ALJ committed legal errors with respect to his mother's credibility and the lack of a testifying medical expert at the hearing.

### 2. The lack of an express credibility determination does not require remand.

The Claimant argues that the ALJ committed a legal error by failing expressly to give an opinion regarding the mother's credibility. The Commissioner rejoins that in a child disability case, the lack of an express discussion regarding the credibility of the child's guardian is not erroneous or a reason for remand when there is no indication that the ALJ discredited the guardian's testimony. *See Hilson v. Barnhart,* 64 Fed. Appx. 134, 136 (10th Cir. 2003) (unpublished). Moreover, ALJ Davis's discussion of the Claimant's educational and medical records reflects his consideration of the mother's observations and opinions regarding her child's functioning.

The Claimant's reply brief does not address *Hilson* or respond to the fact that the ALJ addressed the mother's reports to her child's school and medical care providers. He also does not identify any particular testimony by the mother that he believes was erroneously discounted by the ALJ. Instead, the Claimant argues that the mother's testimony (though he does not cite any particular testimony) made the June 2010 teacher evaluations more credible (but he does not explain how) than the ALJ found them to be. As earlier discussed, the ALJ provided reasoned support for rejecting the one-page teacher evaluations in light of the entire longitudinal school and medical records.

Accordingly, we find unconvincing the Claimant's argument that the lack of an express credibility determination by the ALJ is a ground for remand.

12

### 3. The ALJ was not required to obtain additional medical evidence.

The Claimant also asserts that it was legal error for the ALJ to evaluate whether he met, medically equaled, or functionally equaled any listing without obtaining the testimony of a psychologist at the hearing. He asserts that because the medical expert analyses by agency professionals were prepared in 2008 and March 2009, and thus necessarily did not consider the June 2010 teacher evaluations or the March 2011 disruptive behavior at school, the ALJ was required to summon a medical advisor to testify whether, in light of that evidence, the claimant's impairments medically or functionally equaled any listing. The Claimant cites two cases to support this argument, but neither of them suggests that an ALJ must obtain an updated medical evaluation merely because new information has been added to the administrative record since the previous evaluation. In *Barnett v. Barnhart,* 381 F.3d 664 (7th Cir. 2004), the Seventh Circuit reversed the decision of an ALJ who provided only a two-sentence perfunctory discussion of a listing, never considered a physician's opinion regarding listing equivalence, and "simply assumed the absence of equivalency without any relevant discussion." *Id.* at 670-71. ALJ Davis's evaluation of the evidence in the record does not share these hallmarks. In *Green v. Apfel,* 204 F.3d 780 (7th Cir. 2000), the court stated that an ALJ is required to summon a medical expert *if* "that is necessary to provide an informed basis for determining whether the claimant is disabled." *Id.* at 781.

Other than the general assertion that an ALJ must summon a medical expert to testify at the hearing when there is new documentation that did not exist and could not have previously been considered by a medical expert earlier in the administrative process—an assertion that is not supported by case authority—the Claimant does not attempt to demonstrate that the ALJ's consideration and evaluation of the new documentation was ill-informed or irrational. As discussed above, the ALJ did evaluate the 2010 educational records, the documentation of the Claimant's continued medical care and treatment at Martindale Brightwood Health Center, and the March 2011 school records. His determination that they continued to reflect functioning largely influenced by whether the Claimant takes his medication is consistent with Dr. Blake's earlier expert evaluation. We find no basis for reversing or remanding the ALJ's decision solely because a psychologist was not summoned to testify at the hearing.

## Conclusion

For the reasons detailed herein, we AFFIRM the decision of the Commissioner.

IT IS SO ORDERED.

Date: 09/24/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system